IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FOUR CORNERS WELL CONTROL, LLC,
DANIEL UHL,
and STEVE GERENSCER,

      Plaintiffs,

v.                                                              Civil NO.: _____

                                                                     JURY TRIAL IS DEMANDED

SAN JUAN COLLEGE,
SAN JUAN COLLEGE BOARD OF TRUSTEES,
and FOUR CORNERS INNNOVATIONS, INC.,

      Defendants.

## DEFENDANTS' COMPLAINT FOR ANTITRUST VIOLATIONS, INJUNCTIVE RELIEF, AND DAMAGES

Plaintiffs Four Corners Well Control, LLC, Daniel Uhl, and Steve Gerenscer, by their attorneys Rio Grande Attorneys at Law, P.C. (Amelia P. Nelson), pursuant to the Sherman Antitrust Act 15 U.S.C §§ 1 et seq., the New Mexico Antitrust Act NMSA 1978 §§ 21-28-1 et seq., and University Research Park Act NMSA § 21-28-1 *et. seq*, and as grounds for this complaint states as follows:

## PARTIES

1. Plaintiff Four Corners Well Control, LLC (*hereinafter* "Four Corners") is a domestic limited liability company organized under the laws of the State of New Mexico with a principal place of business in the City of Farmington, State of New Mexico.

2. Plaintiff Daniel Uhl (*hereinafter* "Mr. Uhl") is a resident of Farmington, New Mexico, and is Four Corners' Chief Executive Officer (CEO).

3. Plaintiff Steve Gerenscer (*hereinafter* "Mr. Gerenscer") is a resident of the City of Farmington, State of New Mexico, and is Four Corners' Chief Financial Officer (CFO).

4. Defendant San Juan College (*hereinafter* "SJC") is a public institution located in the City of Farmington, State of New Mexico.

5. Defendant San Juan College Board of Trustees (*hereinafter* "SJC BOT") is the governing body of SJC. The Board of Trustees authority was established by New Mexico state law, and it is subject to the provisions of the State of New Mexico Constitution, applicable rules and regulations of the New Mexico Higher Education Department, State Law, the Federal Constitution, Laws and Regulations and its own policies and procedures.

6. Defendant Four Corners Innovations, Inc. (*hereinafter* "FCI") is a tax exempt, non-profit 501(c)3 organization with its principal place of business in the City of Farmington, State of New Mexico, and was organized under the University Research Park Act, NMSA 1978 §§ 21-28-1, *et seq*. Defendant FCI is governed by a board of directors pursuant to NMSA 1978 § 28-1-4(B), who are known to be T. Greg Merrion, Roger Shay, John A. Byrom, and Jay Paul Williams.

**JURISDICTION**

7. Jurisdiction is conferred upon this judicial district pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

8. Venue is proper in this district pursuant to 15 U.S.C. 15, 22, and 26, and 28 U.S.C. § 1391 because Defendants transact business in this district, Defendants have their principal places of business and are incorporated in this district, and a substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and continues to be carried on within this District. The acts complained

of have had, currently have, and will have substantial anticompetitive effects in this district.

## BACKGROUND & MARKET DEFINITIONS

9. This matter arises from unreasonable restraint of trade and monopolization efforts in the well control market.

10. Well control means methods used to minimize the potential for the well to flow or kick and to maintain control of the well in the event of flow or a kick. It applies to drilling, well-completion, well-workover, abandonment, and well-servicing operations, and includes measures, practices, procedures and equipment, such as fluid flow monitoring, to ensure safe and environmentally protective drilling, completion, abandonment, and workover operations as well as the installation, repair, maintenance, and operation of surface and subsea well-control equipment

11. Well control is often the technique used in oil and gas operations such as drilling, well workover, and well completions for maintaining the fluid column hydrostatic pressure and formation pressure to prevent influx of formation fluids into the wellbore.

12. The International Association of Drilling Contractors (*hereinafter* "IADC") is a forum for all oil and gas drilling industry stakeholders and provides accreditation programs that assist companies in efforts to ensure quality and consistency in training, training content, and adherence to relevant industry standards.

13. The "Well Control" education, training and certification market is defined as the market for education, training and certification required for IADC accreditation and compliance. Well control education, training and certification is sought by individuals and businesses

in the State of New Mexico and throughout the nation because it is required for accreditation compliance.

14. Plaintiff Four Corners is an accredited IADC WellCap and well control education, training, and certification provider located in the Farmington, New Mexico area.

15. Plaintiffs Uhl and Gerenscer own and operate Four Corners.

16. SJC operates the School of Energy as one of its public education departments.

17. The SJC School of Energy provides education, training and certification in commercial driver's license training, professional development training and course.

18. The SJC School of Energy is an accredited IADC WellCap provider for Well Control Training for Drilling, Workover/Completion, Supervisor Level Training.

19. SJC receives federal and state funding, and provides scholarship and other funding.

20. SJC is the parent program to FCI, which is labeled as a "college's research park."

21. The SJC BOT regulates and governs SJC and approved the creation of the FCI.

22. FCI is "a program extension of San Juan College" and purports that it is "dedicated to charitable, scientific and educational purposes."

23. FCI states that it "…promotes the public welfare and prosperity of the people of New Mexico, fosters economic development within New Mexico, and engages in other cooperative ventures of innovative technological significance that will advance education, science, research, conservation, or economic development within New Mexico."

24. FCI is regulated and governed by the FCI Board of Directors who created bylaws and make decisions.

25. Randy A. Pacheco, Ph.D., is the CEO of FCI, and was the Dean of SJC School of Energy until he stepped down on December 31, 2015.

26. FCI generates approximately $450,000 per year in annual revenue.

27. FCI provides training and certification courses in the well control market.

28. Four Corners conducts business in the well control market.

29. SJC, SJC BOT, and FCI conduct business in the well control market.

30. The well control marketplace is a concentrated market and barriers to entry into the Well Control Market are high. The barriers to the market include that (1) the knowledge and skill base necessary for well control education, training, and certification is precise and high; (2) training and certification programs must have accreditation from IADC or a similar accrediting body; (3) the training products are protected by copyright; and (4) new entrants to the market must have the accreditation, skills, background, and knowledge to compete in the market.

31. The relevant geographical market for well control is the United States.

32. SJC and FCI modified the prices of training and certification courses after learning of Plaintiff FCWS pricing structure.

33. On or about July 9, 2018, members of the FCI Board of Directors and SJC members stated that they wanted to reduce the tuition costs for well control training, education and certification to run out competition.

34. On or about July 18, 2018, Defendant SJC reduced the prices of well control training, education and certification.

35. The SJC / FCI well control training, education and certification prices are below the prices for the same product and services by Plaintiff Four Corners.

36. The SJC BOT as the governing body of SJC approves by implication the training, education and certification prices.

37. Defendants have misrepresented and fraudulently represented to IADC and other entities, individuals and organizations that Four Corners acts unethically and without proper accreditation.

38. Defendants have contacted the San Juan Sheriff's Department and used their services to contact Four Corners' clients to demand paperwork and business documents.

39. On July 20, 2018, IADC suspended Four Corners Well Control from operating "any WellSharp courses for the next 3 months" and suspended Plaintiff Uhl's instructor certification for 3 months, and suspended Plaintiff Gerenscer for 6 months.

40. The basis for IADC's suspension was that it had "been brought to [their] attention" that:

    a. Four Corners Well Control hired Jeffrey Beckwith while he was also contracted by Lloyds Register as a proctor for our WellSharp Program.

    b. Since being hired, Mr. Beckwith has proctored approximately 13 courses for Four Corners Well Control.

    c. Mr. Beckwith's wife, Terri Beckwith, has also proctored approximately 5 courses since the hiring of Mr. Beckwith.

    d. Mr. Beckwith proctored his own Instructor Knowledge exam on May 24th, 2018

    e. Steven Gerencser is scheduled to deliver/train two courses in two different locations at the same time.

41. The information relied upon by IADC is known to be misrepresentative and false and is understood to have been provided by Defendants for the purpose of having Plaintiff's accreditation and certifications suspended and removed.

**COUNT I**
**ILLEGAL RESTRAINT OF TRADE IN VIOLATION**
**OF THE SHERMAN ANTI-TRUST ACT, 15 U.S.C. § 1**

30. All previous paragraphs herein are incorporated by reference.

31. Pursuant to section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

32. Pursuant to sections 15 and 26 of the Sherman Act, any person injured in business by reason of the antitrust laws may sue in a district court of the United States.

33. SJC and FCI engaged in a concerted action to depress and fix prices for education, training, and certification in New Mexico and throughout the United States.

34. Defendants' price fixing efforts are evidenced by the lowering of its education, training and certification prices for certain well control programs.

35. Defendants' conduct unreasonably restrains trade with other organizations in the well control education, training and certification programs.

36. Defendants' entered into pricing agreements with the intent to fix and depress the prices of educational services with the intention of preventing Plaintiffs from competing in the market.

37. The conduct is predatory pricing which is the practice of offering goods or services at exceptionally low prices, thereby forfeiting some profit in order to drive competitors out of the market, discipline them, and/or deter entry.

38. Defendants price modification conduct cannot be profitable unless competition is eliminated or restrained.

39. Defendants have misrepresented information to IADC resulting in suspension.

40. Defendants acted to unreasonably restrain trade and drive competition away and out of the geographical well control education, training and certification market.

41. Plaintiffs have been damaged by Defendants' unlawful conduct and have caused and will continued to cause damage.

42. Plaintiffs request that the Court grant immediate injunctive relief and restrain and prevent further violations of the Sherman Act by enjoining Defendant FCI from continuing its conduct and instituting a temporary restraining order prohibiting Defendant FCI from further and future price fixing and forcing Defendant FCI to reinstate reasonable market prices.

WHEREFORE, Plaintiffs are entitled to damages, including loss of compensatory damages, simple interest, treble liquidated damages, costs, and reasonable attorney's fees. Defendants are subject to fines under Section 2 of the Sherman Antitrust Act, and request is made that the Court issue a temporary restraining order prohibiting Defendant FCI from further and future price fixing and forcing Defendant FCI to reinstate reasonable market prices.

<u>**COUNT II**</u>
<u>**ATTEMPTED MONOPOLY IN VIOLATION OF**</u>
<u>**THE SHERMAN ANTI-TRUST ACT 15 U.S.C. § 2**</u>

43. All paragraphs are incorporated by reference.

44. Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, forbids conspiracies to fix prices or monopolize or attempt to monopolize in a given geographical area.

45. Sections 15 and 26 of the Sherman Act, allow any person injured in business by reason of the antitrust laws to sue in a district court of the United States.

46. SJC and FCI have willfully acquired and attempted to maintain a monopoly in the Well Control market by its concerted actions when they reduced prices for education, training and certification courses in the well control geographic area.

47. Defendants' concerted actions were intended to depress and fix prices to be paid to well control educators in New Mexico and throughout the United States by the lowering the cost of its education, training and certification prices.

48. Defendants' act of fixing and depressing prices of education, training and certification courses occurred in direct response to determining the prices for the same competitive services provided by Plaintiff Four Corners.

49. Defendants forfeited profit in order to drive Plaintiff Four Corners out of the market, and cannot be profitable unless competition is eliminated or restrained.

50. Defendants acted to monopolize the education, training and certification market in New Mexico and throughout the United States.

51. Defendants acted with the intent to drive competition away and out of the geographical well control education, training and certification market.

52. Plaintiffs have been and will continue to be damaged by Defendants' unlawful conduct and request that the Court grant immediate injunctive relief and restrain and prevent further violations of the Sherman Act by enjoining SJC and FCI from continuing its price fixing and terminating the organization, and the Court issued a temporary restraining order prohibiting FCI from further and future price fixing and forcing FCI to reinstate reasonable market prices.

WHEREFORE, Plaintiffs are entitled to damages, including loss of compensatory damages, simple interest, treble liquidated damages, costs, and reasonable attorney's fees. Defendants are also subject to fines under Section 2 of the Sherman Antitrust Act, and temporary restraining order and injunction.

## COUNT III
## ATTEMPTED COMPETITION AND MISUSE OF MONEY IN VIOLATION OF UNIVERSITY RESEARCH PARK ACT NMSA 1978 §§ 21-28-1 et seq.

53. All paragraphs are incorporated by reference

54. Pursuant to NMSA 1978 § 21-28-2, a University Research Park Act is intended to promote the public welfare and prosperity of the people of New Mexico, to foster economic development within New Mexico, to forge links between New Mexico's educational institutions, business and industrial communities and government through the development of research parks on university real property, and to engage in other cooperative ventures of innovative technological significance that will advance education, science, research, conservation, health care or economic development within New Mexico.

55. FCI is a research park corporation and was created by SJC under the University Research Park Act (*hereinafter* "URPA").

56. A URPA research park corporation must be separate and apart from the state and university.

57. The URPA regulates the powers and duties of SJC and FCI.

58. FCI and its Board of Directors created bylaws which regulate the operation and mandate the process of decisions, determinations, and contracts on its behalf.

59. FCI's Board of Directors acted outside the scope of their authority when they engaged in and approved the contract as part of the conspiracy to modify prices to monopolize the well control market.

60. The FCI and Board of Directors acted outside the scope of their authority when they engaged in and approved the contract as part of the conspiracy to modify prices in an effort to unreasonably restrain trade in the well control market.

61. Defendants have violated the URPA.

62. Defendants have violated federal laws.

63. These violations have caused damages to Plaintiffs.

WHEREFORE, Plaintiffs are entitled to remedy for a violation of the URPA, and Defendants are liable under URPA, including immediate injunction of the conduct by Defendants SJC, FCI, FCI Board of Directors, and mandated judicial dissolution of the research park corporation, and for such other available and further relief.

## COUNT IV
## ATTEMPTED MONOPOLIZATION OF THE WELL CONTROL MARKET IN VIOLATION OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 2 AND CLAYTON ACT 15 U.S.C. § 4 *et seq.*

64. All paragraphs herein are incorporated by reference.

65. Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, prohibits conspiracies to fix prices or monopolize or attempt to monopolize in a given geographical area.

66. Sections 15 and 26 of the Sherman Act, allow any person injured in business by reason of the antitrust laws to individually sue in a district court of the United States.

67. Section 4 of the Clayton Act allows anyone injured in business or property by reason of anything forbidden by the antitrust laws to bring a personal cause of action.

68. Section 7 of the Act prohibits mergers and acquisitions where the effect "may be substantially to lessen competition, or to tend to create a monopoly."

69. As amended by the Robinson-Patman Act of 1936, the Act bans discriminatory prices, services, and allowances in dealings between merchants.

70. It is unlawful to discriminate in price and for any person engaged in commerce to directly or indirectly discriminate in price between different purchasers and where the effect of the discrimination may be substantially to reduce competition or tend to create a monopoly or to injury or destroy competition in the line of commerce.

71. SJC organized FCI, and FCI maintains a connection with SJC.

72. FCI is an education, training, and certification merchant in the well control marketplace.

73. Defendants have and continue to engage in conduct that demonstrates the intent and willfulness to establish and maintain a monopoly in the subject market through exclusionary conduct.

74. SJC and FCI intentionally price well control education, training and certification services with the intent to undercut other well control education providers in a way that would harm competition under New Mexico.

75. Defendants were aware of Four Corners price for well control education, training and certification services, and knowingly induced discriminatory, disproportionate, and predatory prices for its competitive well control education, training and certification services.

76. Defendants have disproportionately adjusted prices on its well control education, training and certification services, with no justification for the actions and conduct which have facilitated SJC and FCI's attempted monopolization of the Well Control market.

77. SJC and FCI and its Board of Directors intended through their conduct to monopolize and unreasonably restrain trade by predatory pricing in the market without justification and with calculated conspiracy to fix prices substantially lower than their competitors in the geographic market.

78. FCI has engaged in conduct contrary to its own self-interest indicating conspiracy by lowering prices for education, training and certification below the relevant geographic market rate and solely due to the resources available from Defendant SJC.

79. FCI and SJC's monopolizing conduct has deterred the development of competing products and services, damaged consumers, and damaged competitors.

80. Plaintiffs have lost clientele, consumers, and students, and the reasonable ability to compete due to Defendants' monopolization of the market created by predatory pricing.

81. Plaintiffs were injured and continue to be injured by Defendants antitrust conduct.

82. Pursuant to 15 U.S.C. § 26, plaintiffs request that the Court grant immediate injunctive relief and restrain and prevent further violations of the Clayton Act by enjoining SJC and FCI from continuing its price fixing and terminating the organization, and requesting the Court issue a temporary restraining order prohibiting FCI from further and future price fixing and forcing FCI to reinstate reasonable market prices.

WHEREFORE, Plaintiffs are entitled to damages, including loss of compensatory damages, simple interest, treble liquidated damages, costs, and reasonable attorney's fees. Defendants are also subject to fines under the Clayton Act, and temporary restraining order and injunction.

## COUNT IV
## ATTEMPTED MONOPOLIZATION AND UNREASONABLE RESTRAINT OF TRADE IN VIOLATION OF THE NEW MEXICO ANTI-TRUST ACT
## NMSA 1978 §§ 57-1-1 *et seq.*

83. All paragraphs are incorporated by reference.

84. Pursuant to NMSA 1978 § 57-1-1 as amended through 1995, the New Mexico Antitrust Act, every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is unlawful within the State of New Mexico.

85. The New Mexico Antitrust Act provides a civil remedy for persons injured by conduct which is in violation of the Act and which restrains trade or commerce within the State of New Mexico.

86. As stated herein, Defendant SJC and Defendant FCI have a demonstrated a history of collusion and have conspired to unreasonably restrain trade.

87. Defendants conduct has deprived Plaintiffs and others similarly situated of due and legal trade in the subject market, and has given Defendant FCI an unfair advantage in contracting for training and certification programs.

88. SJC and SJC FCI modified and controlled the prices of tuition in direct response to Four Corner's prices and tuition and with the intent to eliminate competition.

89. SJC and SJC FCI intentionally controlled and modified the prices at amounts lower than those of SJC and FCI and other competing organizations for the express purpose of preventing competition.

90. SJC and FCI conspired to monopolize the market and unreasonably restrain trade when they shifted the market by decreasing pricing after learning of Four Corners' pricing structure.

91. This has caused injury to the competitive market, restrained trade in the relevant field of well control education, training and certification, and is in violation of the New Mexico Antitrust Act.

92. Plaintiffs were injured and continue to suffer injury to by Defendants antitrust conduct.

WHEREFORE, Plaintiffs are entitled to relief under the New Mexico Antitrust Act, including compensatory damages, punitive and liquidated damages, immediate injunctive relief, and attorney fees and costs.

## RELIEF REQUESTED

Based on the foregoing Plaintiffs respectfully requests:

a. Immediate injunctive relief and a temporary restraining order to enjoin Defendant FCI from continuing its antitrust violations;

b. This matter be heard before a jury;

c. The Court find in favor of all claims and counts brought by Plaintiffs and against Defendants;

d. The award of attorney fees and reasonable costs;

e. The award of compensatory and liquidated damages and administration of fines;

f. The Court order the Defendants to cease their unlawful practices;

g. The Court award such other additional relief and remedy as is necessary and appropriate.

Respectfully Submitted:

RIO GRANDE ATTORNEYS AT LAW, P.C.

*/s/ Amelia P. Nelson 7.20.2018*
AMELIA P. NELSON
amelia@riograndelawfirm.com
1324 6th Street NW
Albuquerque, NM 87102
Telephone: (505) 407-4781
*Attorneys for Plaintiffs*